# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# JACKSONVILLE DIVISION

BARTHOLOMEW STAY
Plaintiff,

vs

OFFICCER FLANNAGAN
Defendant,

3:17-CV-00734-BJD-MCR

PROVIDED TO RECEPTION MEDICAL CENTER FOR MAILING
DATE: 5-25-18
INMATE INITIALS: BS

## DECLARATION IN OPPOSITION TO DEFENDANTS' SUMMARY JUDGEMENT

I AM the Plaintiff in the above entitled case. I make this declaration pursuant to 28 U.S.C 1746 and FED.R.CIV.P 56(e).

### Plaintiffs' Statement of Disputed Factual Issues

DOC 26 filed 4-16-18 PG 1 (PGID 69) by Defendant clearly establish for purposes of this motion, Officer Flanigan is accepting as true Plaintiffs' version of events;

Plaintiff constitution is violated meeting the Deliberate Indifference standard where Defendant knew that there was a substantial risk I would be seriously harmed and they failed to respond reasonably to protect me Plaintiff (Farmer vs Brennan 511 U.S. 825 833 114 S.C.T. 1970 (1994); GOKA vs BOBBIT 862 F.2d 646 651 (7th CIR 1988);

pg 1

Plaintiff shows display evidence to this Honorable Court of subjective knowledge of a risk serious harm, by Officer Flanigan and how Defendant disregarded that risk as well displayed conduct beyond gross negligence thru documents:

1. RESPONSE TO RESISTANCE REPORT Narrative by Defendant Officer Flanigan Page 4 of 5 Page 5 of 5 (DOC 1) Admits that Plaintiff and Moran where cellmates never having any problems with each other. To Defendant did not beleive that the inmates had any issues with each other which is false.

2. (DOC 2) DUTIES AND RESPONSIBILITIES 12.02.06 HOUSING control officer pg. 3 of PRETRIAL DETENTION FACILITY of J.S.O. rule #17 states: Record inmate movement, new housing assignment #24 states: Brief and provide a pass down of info to the oncoming Housing control officer of all activities that may affect the oncoming watch. Plaintiff states DOC 26-1 4/16/18 Plaintiff DEPO 33:24 - DEPO 38:9 where he admits why Moran and Plaintiff seperated. Plaintiff also admits to informing officer Flanigan DEPO 41:8 - 42:16. DOC 8 filed 9/07/17 page 2 of 4 ID 26 4.; 5.; 6.; 8.;
Defendants Answer Defenses Defendant denies knowing any knowledge to reason for our seperation Plaintiffs/MORAN Housing change which will be false as it will be known documented thru there protocol procedure in (DOC 2) above mentioned.

[NOTE] ~~Ba Well~~ monitoring DOC 2 with check

3. Plaintiff ~~(illegible)~~ states that in his depositions he clarify threats insults made in front of Officer Flanigan which Officer Flanigan denies these events, but clearly states He accept Plaintiff's version of events true DOC 26 filed 4-16-18 pg 1 pg ID 59.

pg 2

CCR: 20140804985           JOHN H. RUTHERFORD, SHERIFF                    Page 4 of 5

from his cell to be escorted, I made it just inside the dorm.

At approximately 1340 hours, inmate Moran entered dorm 6W3A and moved quickly to inmate Stay, who was about three steps from the bottom of the staircase, and began to fight with inmate Stay. I then ordered both inmates to stop fighting. Inmate Stay stopped while inmate Moran continued to batter inmate Stay. I then deployed my Conducted Electrical Weapon (CEW) at a distance of approximately four feet and struck inmate Moran in the back with both probes. The CEW took immediate effect, which allowed me to place handcuffs on inmate Moran. The CEW cycled for the complete five seconds. Officer Hogan, hearing the commotion from the 6 west hallway, entered the dorm and placed handcuffs on inmate Stay.

At approximately 1345 hours, while escorting Moran to the 6 east hallway. I notified Sergeant Bliss, who was in floor control, of the situation face to face. Sergeant Bliss then notified Lieutenant Dunnington of the situation via phone.

At approximately 1350 hours in the 6 east hallway, I removed the the probes from inmate Moran's back placing the probes back into the used cartridge. I searched inmate Moran for any weapons and did not locate any. I escorted Moran to the M2 Clinic to be medically evaluated. Moran received a bruise to his head from the altercation. Moran was evaluated and medically cleared by R.N. Feazel. Moran was issued a clean uniform. I escorted Moran back to his housing assignment. I removed the handcuffs from Moran and secured him in his cell. Sgt. Bliss deemed Moran not be placed in a prostraint chair because of him not being a threat to himself, staff, or others.

At approximately 1400 hours, inmate Stay was escorted to the M2 clinic by Ofc. Hogan to be medically evaluated. Inmate Stay sustained a laceration to his lower left jaw line from the altercation by an unknown weapon. Inmate Stay was given a Clean uniform in the clinic. He was medically evaluated and cleared by R.N. Feazel at 1420 hours, to return to his housing assignment.

Inmate Morans cell was searched by Officer Hogan upon his return from escorting inmate Stay to the M2 Clininc.

Due to inmate Stay refusing to press charges on inmate Moran, Sergeant Bliss deemed it not necessary for a patrol officer.

At approximately 1430 hours, the Bio-hazard trusties were called to the floor to clean up blood from the fight and was supervised by Ofc. Hogan.

Entries were made into both of their contact logs of the incident. a Disciplinary Report was written on inmate Moran for the fight.

The used C.E.W. cartridge was placed into a red Bio-hazard sharps container, located in the M2 clininc.

Inmate Moran was moved to 6W1B Cell 22 to prevent any further altercations.

It should be noted that inmate Stay and Moran were cellmates for a period of (DOC1)

Generated 06-26-17 09:28:50 by Barahona, Constance R. (7362CRB)         RTR-201411191423-763D

CCR: 20140804965        JOHN H. RUTHERFORD, SHERIFF        Page 5 of 5

time never having any problems with eachother. They play cards regularly at the cell doors. To my knowledge I did not beleive that the inmates had any issues with eachother.

*Empty Sections*
Business-to-Owner Relationships; Canine Use; Civilian Witness/Bystander Information; Firearm Use; Impact Weapon Use; OC Spray Use; Physical Force Use; Police Suspect Injury; Related Incident Numbers; Suspect Information; Vehicle Use

(Dot 1)

15. Maintain a list of inmates attending recreation, visitation, classes, programs, and/or religious services for inmate accountability utilizing the appropriate documentation (e.g., forms, roll calls, etc.);

16. Monitor classrooms in his area of responsibility during inmate activities;



17. Record inmate movement (e.g., court, hospital, new housing assignment, etc.) in CMIS and/or on other appropriate documentation;

18. Utilize inmate workers to perform sanitation duties;



19. Ensure that inmates performing work assignments are the only inmates allowed to enter the housing control area as outlined in Corrections Operational Order 10.11, Security Doors and Gates;

20. Provide inmates access to telephones according to the established schedule;

21. Inform the Housing Security Officer when inmates need to be searched prior to allowing the inmates entrance into an inmate housing area;

22. Verify inmate counts are conducted as outlined in Corrections Operational Order 10.3, Count Procedures;

23. Be familiar with and respond to emergency situations when required as outlined in Corrections Operational Orders; and

24. Brief and provide a pass down of information to the on-coming Housing Control Officer of all activities that may affect the on-coming watch.

F. The Housing Control Officer will perform any other duties assigned by the area supervisor or higher authority.

II. **Duties and Responsibilities of the PDF Housing Control Officer**

A. The Housing Control Officer is responsible for security and sanitation of the control room.

B. The Housing Control Officer shall:

1. Announce "Male on the Floor" or "Female on the Floor" in the dorms prior to any staff member entering the dorms housing inmates of the opposite gender. The announcement shall be made at least one time prior to entering;

2. Monitor inmates in confinement during the use of telephone and/or shower privileges when appropriate;

3. Enter information in the computer using the appropriate screen for inmates transferred for release, to another housing area, or to another facility;

DUTIES AND RESPONSIBILITIES 12.02.06
HOUSING CONTROL OFFICER
3


(DOC 2)

[DOC 3] RESPONSE TO RESISTANCE REPORT PG 1 OF 5 PG 2 OF 5 show I sustain physical permanent damage to my face area by a weapon razor. Pg 3 of 5 also declare Defendant opened Plaintiff cell while he was aware of another cell being opened at the same time. this establish how defendant disregarded the risk as well conduct beyond high gross negligence as well subjective knowledge of a serious risk threat harm establish from seperation animosity between Plaintiff and Moran thru events that Defendant state as true.

4. (DOC 4) Duties and Responsibilities 12.03.07 Housing security officer 15. of P.D.F which Defendant didn't follow Protocol with moran as he knew to Frisk search before entering housing area.

(DOC 5 1 of 2 see 2 of 2) corrections operational order 7.07.14 Pg 5 sec N Pg 6 sec O, P, Q Defendant also disregarded risk protocol etc displaying deliberate Indifference.

(NOTE DECLARATION OF Jeremy FLANIGAN SEC #7.) Defendant also admitts in documents of hearing threats from other inmates which he disregarded as not serious when its his duty to take safety precaution measures of resolving them.

INCLUDING 7.07.13 sec N, O, pg 5
Pg 3     (DOC 6)

CCR: 20140804965          JOHN H. RUTHERFORD, SHERIFF          Page 1 of 5

(DOC3) BACK →



# RESPONSE TO RESISTANCE REPORT
## Jacksonville Sheriff's Office

| | |
|---|---|
| Created Date: 11-30-14 0656 | Primary Writer: Flanigan, Jeremy P. |
| Document State: Finalized | Job Class: CORRECTIONS |
| Reviewer 1: Bliss, Nicholas D. (61255) | Reviewer 1 Date: 11-30-14 0659 |
| Reviewer 2: Dunnington, Harvey F. (7161) | Reviewer 2 Date: 11-30-14 0825 |
| Reviewer 3: Owens, Toni L. (6685) | Reviewer 3 Date: 12-06-14 1557 |

## Incident Summary

Incident Date: 11-19-14 1340          Officer Call Type: ON VIEW
Incident Location

In Duval county: Y          TAZ: 97          Subsector: A3
Address: 500 ADAMS ST E          Apartment/Lot: [not entered]
Intersecting Street: [not entered]
City, State ZIP: JACKSONVILLE, FLORIDA 32202

Location (General): GOVERNMENT FACILITY/PUBLIC BUILDING LOCATIONS
Location (Specific): LAW ENFORCEMENT FACILITY (COURTHOUSE/JAIL/PRISON/PROBATION/PAROLE/POLICE STATION)
Location Details: INSIDE
Location Description: [not entered]
Corrections Facility: PDF
Corrections Facility Area: 6W3A
Crowd Size: 1-4
Lighting Condition: WELL LIT
RTR Occurred Amidst Inside Lighting: Y
RTR Occurred Amidst Street Lighting: N
Weather: CLEAR
Force Use Reasons: PROTECT PRISONER; PROTECT SELF

## Officer Information

Name: J.P. FLANIGAN #66125

Was Shot: N          Was Injured: N          Was On Duty: Y
Assignment: PDF          Is primary writer: Y          Vehicle Number: [not entered]

## Inmate Information

Name: MORAN, JAEKWON (M, BLACK, 02/17/96)
Gender: MALE          Race: BLACK          Ethnicity: [not entered]
Birthdate: 02/17/1996          Height: 5' 8"          Weight: 155 lb
Complexion: Fair/Light          Voice: NORMAL          Eye Color: Brown
Hair Length: [not entered]          Hair Color: [not entered]          Hair Style: [not entered]
Jail #: 2013014979          Inmate JSO ID: 712996          Facial Hair: [not entered]
Description: [not entered]

Inmate Was Injured: YES          Inmate Had Weapon: Y
Inmate Received Add On Charges: N          Incident Entered in Contact Log: Y

Generated 06-26-17 09:28:50 by Barahona, Constance R. (7362CRB)          RTR-201411191423-763D

| Name: T.W. HOGAN #71530 |
|---|

*Restraints Used:* **HANDCUFFS**

## *Jail Inmate Injury*
**Inmate**

| Name: STAY, BARTHOLOMEW (M, BLACK, 11/28/82) |
|---|

**Attending Nurse**

| Name: J.D. FEAZEL #68692 |
|---|

*Inmate Injury Reason:* **SUSPECT INFLICTED; FIGHTING**
*Seen by Medical:* **Y**     *Inmate Was Transported:* **N**     *Medical Transport Type:* **[not entered]**

### Specific Inmate Injuries

| Body Part | Injury |
|---|---|
| HEAD - JAW (LEFT) | LACERATION |

**Inmate**

| Name: MORAN, JAEKWON (M, BLACK, 02/17/96) |
|---|

**Attending Nurse**

| Name: J.D. FEAZEL #68692 |
|---|

*Inmate Injury Reason:* **OFFICER INFLICTED; FIGHTING**
*Seen by Medical:* **Y**     *Inmate Was Transported:* **N**     *Medical Transport Type:* **[not entered]**

### Specific Inmate Injuries

| Body Part | Injury |
|---|---|
| HEAD - FOREHEAD (LEFT) | BRUISE |

## *Narrative*

On 11/19/2014, I was assigned as the 6 West Security Officer. At approximately 1338 hours, I called Officer Holderfield, the law library officer, to see if he was able to accommodate inmate Stay in the law library. Inmate Stay had asked earlier that morning to go to the law library. Officer Holderfield stated that inmate Stay could come to the law library. Officer Pruett, the pod officer, was dealing with an inmate on the opposite side of the pod. I opened inmate Stay s cell door, then left the pod to escort inmate Stay to the law library. At the time of opening Stays cell door, I was aware of another cell being opened. [DOC3] 3of5

Inmate Moran and inmate Anderson were out of their cell for the allotted one hour. Inmate Anderson was standing by the shower and inmate Moran was cutting his nails on the bench in the 6 west hallway. When exiting the pod inmate Moran handed me the nailclippers and retuned to the dorm with me following shortey behind him. As I was entering the dorm to await for inmate Stay to come down

5. Ensure a corrections officer is present in the housing control area before entering a housing area;

6. Coordinate routing of Inmate Request/Grievance Form (P-0356), immediately addressing and investigating any problems of a security nature;

7. Respond to all requests for assistance from civilians, contract personnel, or other professionals in a prompt, courteous and professional manner;

8. Attempt to resolve any problems, complaints, and/or grievances brought to his attention. If he cannot resolve the issue, refer the issue to the Housing Security Sergeant;

9. Review the Keep Separate From (KSF) list in CMIS and/or the Report of Confinement (P-0339) before sending inmates to activities;

10. Direct inmates attending scheduled and/or unscheduled activities from their housing areas to their authorized destinations. The computer generated inmate roll calls or other appropriate forms shall be used to verify the quantity and identity of each inmate attending;

11. Monitor classrooms in his area of responsibility during inmate activities;

12. Ensure inmates with worn, illegible, or altered wristbands are positively identified and the wristband is replaced immediately;

13. Utilize inmate workers to perform sanitation duties throughout the shift;

14. Ensure unauthorized inmates do not enter the housing control area;

15. Frisk search inmates before allowing them access to an inmate housing area. Searches of inmate living areas will be conducted as outlined in Corrections Operational Orders 10.04, Search Procedures;

16. Conduct inmate counts as outlined in Corrections Operational Order 10.3, Count Procedures;

17. Be familiar with and respond to emergency situations as outlined in Corrections Operational Orders;

18. Accompany the medication nurse during delivery of medication, to the housing area when applicable. The officer will supervise inmates receiving medication as outlined in Corrections Operational Order 22.04, Pharmaceuticals;

19. Distribute inmate meals as outlined in Corrections Operational Order 21.02, Inmate Meals;

(DOC 4)

3
**DUTIES AND RESPONSIBILITIES 12.03.07**
**HOUSING SECURITY OFFICER**

    12. Telephones;

    13. Visitation; and/or

    14. Postal services.

**NOTE:** **Inmates in confinement will receive a minimum of one hour per day of recreation at least five days per week, weather permitting unless security or safety considerations dictate otherwise. Uncontrollable or violent inmates and escape risks are not subject to this provision, but such exceptions must be documented on the Report of Confinement and reviewed weekly by the facility Security Committee for the purpose of determining any change in the status of the inmate. Recreation, refusal of recreation and/or cancellation of recreation will be documented as required in <u>Corrections Operational Order 17.01</u>, Inmate Recreation.**

K. At a minimum, a corrections officer will visually observe each inmate housed in single cell confinement at intervals not to exceed every **thirty minutes**. The observation will be documented by corrections officers using the Guard 1 Pipe Roundskeeper device by touching the designated buttons in the confinement area. Any abnormal behavior will be reported to the Watch Lieutenant and DHS staff immediately by the area supervisor.

L. Inmates who are special management on self-harm precautions or with specific health problems require a corrections officer to conduct a visual check at intervals not to exceed every **fifteen minutes**. If an inmate requires a fifteen-minute check, the observation shall be documented using the Guard1 Pipe Roundskeeper device as described in I.K.

**NOTE:** **Corrections Officers observing confinement inmates in areas where the Guard 1 pipe is not yet in use, the designated pipe is inoperable or if ALL buttons in that confinement area are inoperable, shall document their observations of the inmate(s) using the Security Cell Inspection Form (P-0552), the Correctional Management Information System (CMIS), or a paper Daily Post Log (P-1035) as appropriate.**

**NOTE:** **When officers are making 15 or 30 minutes checks on inmates, the officers will take care not to make the checks exactly on each quarter or half-hour. Officers will ensure they are not predictable in the times they make their checks while complying with the time limits for the checks.**

M. The area supervisor will ensure all self-harm inmates and their cells will be thoroughly searched within the first hour of each shift. The searches will be documented in the CMIS Daily Post Log, noting the officers and supervisor involved, cells searched and any contraband found.

(N.) Before any inmate is removed from his confinement cell, the Report of Confinement form will be checked for any special restrictions (e.g., keep separate from, restraint restrictions, two officer control, etc.).

(DOC 57 #1 of 2)

O.  Inmates in confinement will clean their cells daily, unless they are violent or unmanageable. With a minimum of two corrections officers present, violent or unmanageable inmates will be placed in restraints and removed from their cell. The designated inmate worker will clean the cell. Inmate workers shall be in the presence of an officer when in confinement dorms for any reason. When an inmate is removed from his confinement cell for any reason, only one inmate will be allowed out of the confinement cell in the dayroom or shower area at a time unless housed with another inmate in the same cell.

P.  Inmates in confinement will be given the opportunity to shower daily and use the telephone as indicated on the Report of Confinement Form (P-0339). All inmates are required to shower twice a week. When an inmate is removed from his confinement cell for telephone or shower use, only one inmate will be allowed out of the confinement cell at a time unless housed with another inmate in the same cell:

NOTE:  **When two inmates are housed together in a cell designated as a segregation cell normally housing one inmate, both inmates may be allowed out of their cell into the dayroom for showers, phone and/or other activities at the same time.**

   1. All inmates in confinement will be allowed one hour of out-of-cell time daily for the purpose of taking a shower and using the telephone unless their confinement sheet dictates otherwise;

   2. The inmate's shower or refusal to do so must be documented on the Security Cell Inspection Form, in CMIS or a computer generated roll call as appropriate, noting the exact start and finish times or the time of the inmate's refusal;

   3. The computer-generated roll call will be signed by the area supervisor and forwarded to the Watch Lieutenant when completed. The computer-generated roll calls will then be bound together in a secure fashion, properly labeled and forwarded to the administrative clerical area for archival storage; and

   4. At MCC, in C Isolation, inmates will be handcuffed through the cell door prior to being brought out for showers. They will be secured in the shower vestibule and the handcuffs will be removed through the opening in the shower door. The same process will be used when returning the inmate to the cell;

   4. Inmates housed in I-Blocks will have their phone usage documented in their inmate Contact Log. No computer-generated roll call is necessary.

Q.  No razors are allowed in any confinement dorm or cell. Inmates in confinement may request a shave from the barber inmate workers via inmate request form.

R.  Inmates released from confinement will be re-assigned by:

(DOC 5) #2 of 2

  14. Postal services.

**NOTE:** **Inmates in confinement will receive a minimum of one hour per day of recreation at least five days per week, weather permitting unless security or safety considerations dictate otherwise. Uncontrollable or violent inmates and escape risks are not subject to this provision, but such exceptions must be documented on the Report of Confinement and reviewed weekly by the facility Security Committee for the purpose of determining any change in the status of the inmate. Recreation, refusal of recreation and/or cancellation of recreation will be documented as required in Corrections Operational Order 17.01, Inmate Recreation.**

K. At a minimum, a corrections officer will visually observe each inmate housed in single cell confinement at intervals not to exceed every **thirty minutes**. The observation will be documented by corrections officers using the Guard 1 Pipe Roundskeeper device by touching the designated buttons in the confinement area. Any abnormal behavior will be reported to the Watch Lieutenant and DHS staff immediately by the area supervisor.

L. Inmates who are special management on self-harm precautions or with specific health problems require a corrections officer to conduct a visual check at intervals not to exceed every **fifteen minutes**. If an inmate requires a fifteen-minute check, the observation shall be documented using the Guard1 Pipe Roundskeeper device as described in I.K above.

**NOTE:** **Corrections Officers observing confinement inmates in areas where the Guard 1 pipe is not yet in use, the designated pipe is inoperable or if ALL buttons in that confinement area are inoperable, shall document their observations of the inmate(s) using the Security Cell Inspection Form (P-0552), the Correctional Management Information System (CMIS), or a paper Daily Post Log (P-1035) as appropriate.**

**NOTE:** **When officers are making 15 or 30 minutes checks on inmates, the officers will take care not to make the checks exactly on each quarter or half-hour. Officers will ensure they are not predictable in the times they make their checks while complying with the time limits for the checks.**

M. The area supervisor will ensure all self-harm inmates and their cells will be thoroughly searched within the first hour of each shift. The searches will be documented in the CMIS Daily Post Log, noting the officers and supervisor involved, cells searched and any contraband found.

N. Before any inmate is removed from his confinement cell, the Report of Confinement form will be checked for any special restrictions (e.g., keep separate from, restraint restrictions, two officer control, etc.).

O. Inmates in confinement will clean their cells daily, unless they are violent or unmanageable. With a minimum of two corrections officers present, violent or unmanageable inmates will be placed in restraints and removed from their cell.

(DOC 6)

By evidence shown "its a causal connection between the alleged constitutional violation and the defendants personal participation in the constitutional violation Zatler vs Wainwright, 802 F.2d 397, 401 (11th cir. 1986).

It is undisputed that plaintiff constitution was violated under the deliberate indifference standard under all three prongs "Townsend vs Jefferson County 601 F.3d 1152, 1158 (11th cir 2010); Mann, 588 F.3d at 1307; McEligott vs Foley, 182 F.3d 1248, 1255 (11th cir. 1999)"

Plaintiff has a permanent scar disfigurement of face from razor blade assault Cantu v Jones 293 F.3d 839, 843-44 (5th cir 2002) seeking compensatory damages punitive damages etc... Plaintiff suffered numerous stitches which its documented by plaintiff M2 clinic records Pretrail Detainee facility in Duval County where incident arose. Plaintiff moves this case to go to jury trial as the evidence sustained displayed will be best proceeded ridge by a jury. Plaintiff submitts Defendant summary judgement to be denied as Defendant already admitted plaintiff version of events are true establishing that its no allegations due to plaintiff is conforming the same complaint events that transpired before and on the day of incident. Plaintiff feels as the defendant is misleading the court with contradiction denials false allegations which isnt logic or solid facts. Plaintiff has shown how defendant with material genuine facts fall under the deliberate indifference standard violating my constitutional rights.

PGA

I DECLARE UNDER PENALTY OF PERJURY that the foregoing is true and correct Pursuant to 28 U.S.C. 1746 and Fed. R. Civ. P. 56(e)

DATE 5-25-18

Bartholomew Stay

*/s/ Bartholomew Stay*

CERTIFICATE OF SERVICE

I CERTIFY that this Declaration document was handmailed to Ashley Benson 117 W. Duval St Suite 480 Jax, FL 32202  US District Court Clerk MIDDLE DISTRICT FLORIDA JAX DIVISION 300 N. Hogan St Suite 9-150 Jax FL 32202 on this 25th day of May 2018.

Respectfully submitted
Bartholomew Stay

PG 5