UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION


BARTHOLOMEW STAY,

                    Plaintiff,

vs.                                        Case No. 3:17-cv-734-J-39MCR

OFFICER FLANNAGAN,[1]

                    Defendant.
_____

<u>**ORDER**</u>

**I.  Status**

Plaintiff Bartholomew Stay, an inmate of the Florida
Department of Corrections, filed a civil rights Complaint
(Complaint) (Doc. 1) pursuant to 42 U.S.C. § 1983.[2]  Defendant
Jeremy P. Flanigan filed a Dispositive Motion for Summary Judgment
(Motion) (Doc. 26).  Plaintiff filed his Declaration in Opposition
to Defendant's [Motion for] Summary Judgment (Response) (Doc. 32).
<u>See</u> Summary Judgment Notice (Doc. 27).

Plaintiff raises a claim of deliberate indifference to a
substantial risk of serious harm.  Complaint at 5-6.  More
specifically, he claims Defendant Flanigan was deliberately
indifferent to his substantial risk of serious harm, resulting in

_____

        [1] The **Clerk** shall correct Defendant's surname on the docket
from Flannagan to Flanigan.

        [2] The Court references the page numbers assigned by the
electronic filing system.

Plaintiff being assaulted by another inmate at the Pretrial Detention Facility (PTDF). Id. As relief, Plaintiff seeks compensatory and punitive damages. Id. at 6-7.

The alleged facts supporting the Complaint are set forth at pages 5-6. Plaintiff alleges that, three months prior to the assault, he was housed in high security confinement at the PTDF. Id. at 5. Plaintiff and detainee Jaekwon Moran expressed a desire to become roommates, and the next day, they were moved in together as roommates. Id. After three weeks as roommates, their arguments almost reached the point of a physical altercation, and they both asked security personnel for a cell change, which took place. Id.

The morning after the cell change took place, Defendant Flanigan asked Plaintiff the reason for the move, and Plaintiff described "extreme animosity and dislike" for Mr. Moran. Id. For weeks after the cell change, Mr. Moran would kick Plaintiff's door and threaten to do Plaintiff bodily harm. Id.

Mr. Moran was out of his cell for shower time on November 19, 2014. Id. Plaintiff had a call-out for the law library on that date, under a one-two officer escort. Id. However, there was no officer present to escort, shackle, and transport Plaintiff to the law library. Id. Defendant Flanigan was fully aware of the animosity and hatred between Plaintiff and detainee Moran, and observed Moran on a daily basis kicking Plaintiff's door and making

threats, and Plaintiff exhibiting his animosity towards Mr. Moran. <u>Id</u>.

Defendant Flanigan opened Plaintiff's cell door without an appropriate available escort or any other appropriate measure being taken to prevent a physical conflict between the two detainees. <u>Id</u>. According to PTDF regulations, inmates are not supposed to be out of their cells in the presence of one another during shower or call-out time. <u>Id</u>. Mr. Moran assaulted Plaintiff with a razor, a prohibited item under PTDF solitary confinement rules. <u>Id</u>. Mr. Moran sliced Plaintiff's lower jaw, and the injury required significant medical treatment. <u>Id</u>. The officer response time was over five minutes, and the officers had to subdue Moran. <u>Id</u>.

## II. Summary Judgment Standard

"Summary judgment is appropriate only if 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" <u>Moton v. Cowart</u>, 631 F.3d 1337, 1341 (11th Cir. 2011) (quoting Fed. R. Civ. P. 56(a)). "If the moving party meets this burden, 'the nonmoving party must present evidence beyond the pleadings showing that a reasonable jury could find in its favor.'" <u>Ekokotu v. Federal Exp. Corp.</u>, 408 F. App'x 331, 333 (11th Cir.) (per curiam) (quoting <u>Fickling v. United States</u>, 507 F.3d 1302, 1304 (11th Cir. 2007)), <u>cert</u>. <u>denied</u>, 565 U.S. 944 (2011).

### III.  Defendant's Motion

Defendant Flanigan, in his Motion, asks the Court to grant summary judgment in his favor, asserting there is no genuine issue of material fact or law entitling Plaintiff to relief.  Motion at 1.  Defendant claims he is entitled to qualified immunity and the undisputed facts fail to establish liability for a constitutional violation.  Id.  In support of the Motion, Defendant relies on the Videotaped Deposition of Bartholomew Stay (Deposition) (Doc. 26-1) and the Declaration of Jeremy P. Flanigan (Declaration) (Doc. 26-2).  Motion at 2.

Defendant avers he is entitled to qualified immunity, id. at 6-9, there is no constitutional violation, id. at 9-12, the law is not clearly established that Defendant's conduct was unconstitutional, id. at 12-14, and "[e]ven accepting as true Plaintiff's version of events, the uncontradicted record evidence establishes that Officer Flanigan did not violate Plaintiff's constitutional rights."  Id. at 14.

### IV.  Plaintiff's Response

Plaintiff, in response to the Motion, relies on documents, asserting they evince "subjective knowledge of a risk [of] serious harm, by Officer Flanigan and how Defendant disregarded that risk as well [as] displayed conduct beyond gross negligence[.]" Response at 2.  Plaintiff relies on the Response to Resistance Report,

Jacksonville Sheriff's Office (Doc. 32 at 7-8, 3-4),[3] but contends a specific part of Defendant Flanigan's narrative, contained therein, is false. Response at 2 ("It should be noted that inmate Stay and Moran were cellmates for a period of time never having any problems with eachother [sic]. They play cards regularly at the cell doors. To my knowledge I did not believe that the inmates had any issues with eachother [sic]." Id. at 3-4.

Plaintiff also highlights portions of internal rules of the PTDF, including the obligation to record inmate movement (court, hospital, new housing assignment, etc.); to ensure inmates performing work assignments are the only inmates allowed to enter the housing control area; to pass down information to the on-coming Housing Control Officer of all activities that may affect the on-coming watch; and to monitor inmates in confinement during the use of telephone and/or shower privileges, when appropriate. Id. at 2, 5. He also relies on a portion of the Response to Resistance Report, referencing the laceration to Plaintiff's lower left jaw line from the altercation by an unknown weapon as evidence of injury. Id. at 3, 6. Plaintiff contends Defendant's own statement within the report shows he disregarded the risk as well as exhibited conduct beyond gross negligence. Id. at 6. Defendant Flanigan wrote: "I opened inmate Stay[']s cell door, then left the

_____

[3] Plaintiff did not submit the pages of this document in numerical order. The Court will reference the page numbers assigned by the electronic filing system.

pod to escort inmate Stay to the law library. At the time of opening Stay[']s cell door, I was aware of another cell being opened." <u>Id</u>. at 8.

Plaintiff complains Defendant Flanigan did not follow protocol when he failed to frisk/search inmate Moran before allowing him access to an inmate housing area. <u>Id</u>. at 6, 9. Finally, Plaintiff maintains Defendant Flanigan did not comply with confinement protocol by failing to check for any special restrictions on the Report of Confinement form, disregarding the requirement that only one inmate will be allowed out of the confinement cell at a time for telephone or shower use unless the inmates are cellmates, and failing to ensure no razors were in any confinement dorm or cell. <u>Id</u>. at 6, 11-12.

### V. The Fourteenth Amendment

In order to state a claim under 42 U.S.C. § 1983, a plaintiff must allege that (1) the defendant deprived him of a right secured under the United States Constitution or federal law, and (2) such deprivation occurred under color of state law. <u>Salvato v. Miley</u>, 790 F.3d 1286, 1295 (11th Cir. 2015); <u>Bingham v. Thomas</u>, 654 F.3d 1171, 1175 (11th Cir. 2011) (per curiam) (citation omitted); <u>Richardson v. Johnson</u>, 598 F.3d 734, 737 (11th Cir. 2010) (per curiam) (citations omitted). Although Plaintiff references both the Eighth and Fourteenth Amendments in his Complaint at 5, where the plaintiff is a pretrial detainee, as Plaintiff was at the time

of the alleged events, the Due Process Clause of the Fourteenth Amendment, not the Eighth Amendment, is the applicable provision of the Amendments to the United States Constitution, and will govern this Court's analysis. Scott v. Miami Dade Cty., 657 F. App'x 877, 881 n.4 (11th Cir. 2016) (per curiam) (recognizing the decisional law is interchangeable because the standard is the same in both contexts). To establish a Fourteenth Amendment violation, there are particular requirements that must be met:

> "A prison official's deliberate indifference to a known, substantial risk of serious harm to an inmate violates the Fourteenth Amendment." Cottone v. Jenne, 326 F.3d 1352, 1358 (11th Cir. 2003) (alteration omitted) (internal quotation marks omitted). To survive summary judgment in a case alleging deliberate indifference, a plaintiff must "produce sufficient evidence of (1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3) causation." Carter v. Galloway, 352 F.3d 1346, 1349 (11th Cir. 2003) (per curiam) (internal quotation marks omitted).

Goodman v. Kimbrough, 718 F.3d 1325, 1331 (11th Cir. 2013) (footnote omitted). In order to prevail on his claim, Plaintiff must satisfy each of these elements.

The second element, deliberate indifference to the risk, has both subjective and objective components. In order to satisfy the subjective component, a plaintiff must allege sufficient facts to allow a jury to conclude the defendant actually knew that the plaintiff faced a substantial risk of serious harm, and to satisfy the objective component, a plaintiff must allege facts showing the

defendant disregarded the known risk by failing to respond in an objectively reasonable manner. Caldwell v. Warden, FCI, Talladega, 748 F.3d 1090, 1099 (11th Cir. 2015). Therefore, Plaintiff is required to show not only that there was a substantial risk of serious harm, but that Defendant Flanigan knew of that substantial risk of serious harm and knowingly or recklessly disregarded that risk. Hale v. Talapoosa Cty., 50 F.3d 1579, 1583 (11th Cir. 1995) (quotation and citations omitted). Based on this standard, merely negligent failure to protect Plaintiff from attack would not justify liability; "[p]roof of deliberate indifference requires a great deal more than does proof of negligence." Goodman, 718 F.3d at 1332. Showing deviation from policy is not enough; this would be more in the nature of tort law, presenting an issue of dereliction of duty, not deliberate indifference. Indeed, the deliberate indifference standard is not just "a brand of negligence redux[.]" Id. at 1334 (citing Farmer v. Brennan, 511 U.S. 825, 838 (1994)).

In Goodman, the Eleventh Circuit recounted, in order to prove a Fourteenth Amendment violation of deliberate indifference to a substantial risk of serious harm, a plaintiff must prove (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than gross negligence. Id. at 1332 (quotation and citation omitted). See Losey v. Thompson, 596 F. App'x 783, 789 (11th Cir. 2015) (per curiam) (requiring a

showing by conduct that is more than gross negligence). This Court recognizes that recent Eleventh Circuit opinions have differed on whether the standard of proof should be "more than gross negligence" or more than "mere negligence" in deliberate indifference to serious medical needs cases. See McLeod v. Sec'y, Fla. Dep't of Corr., No. 15-10851, 2017 WL 541398, at *2 (11th Cir. Feb. 10, 2017) (per curiam) (listing the three components of deliberate indifference in a deliberate indifference to serious medical needs case, including (1) the official's subjective knowledge of a risk of serious harm; (2) the official's disregard of that risk; and (3) conduct that is more than mere negligence); Melton v. Abston, 841 F.3d 1207, 1223 n.2 (11th Cir. 2016) (per curiam) (same, and disagreeing with an Eleventh Circuit panel decision stating a claim of deliberate indifference requires proof of more than gross negligence, finding the "more than mere negligence" standard more consistent with Farmer and in line with the decision in McElligot v. Foley, 182 F.3d 1248 (11th Cir. 1999)).

Historically, courts have addressed the meaning of the varied terminology used in cases considering claims of deliberate indifference: "[t]raditionally, authorities have described 'deliberate indifference' as a state of mind more blameworthy than mere negligence, or even gross negligence, and more than a lack of ordinary due care for a prisoner's safety." Concepcion v. Dowd,

9

No. 6:08-cv-2130-Orl-35GJK, 2011 WL 2560451, at *8 (M.D. Fla. June 28, 2011) (citations omitted). In the seminal "deliberate indifference" case, Farmer, the Supreme Court explained:

> With deliberate indifference lying somewhere between the poles of negligence at one end and purpose or knowledge at the other, the Courts of Appeals have routinely equated deliberate indifference with recklessness. See, e.g., LaMarca v. Turner, 995 F.2d 1526, 1535 (CA11 1993); Manarite v. Springfield, 957 F.2d 953, 957 (CA1 1992); Redman v. County of San Diego, 942 F.2d 1435, 1443 (CA9 1991); McGill v. Duckworth, 944 F.2d, at 347; Miltier v. Beorn, 896 F.2d 848, 851–852 (CA4 1990); Martin v. White, 742 F.2d 469, 474 (CA8 1984); see also Springfield v. Kibbe, 480 U.S. 257, 269, 107 S.Ct. 1114, 1120–1121, 94 L.Ed.2d 293 (1987) (O'CONNOR, J., dissenting). **It is, indeed, fair to say that acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk.**

Farmer, 511 U.S. at 836 (emphasis added). The Supreme Court also discussed where the term "gross negligence" falls on the spectrum of proof, and opined: "[b]etween the poles lies 'gross negligence' too, but the term is a 'nebulous' one, in practice typically meaning little different from recklessness as generally understood in the civil law[.]" Id. n.4.

This Court need not decide whether the standard of proof is "mere" or "gross" negligence in a deliberate indifference to a substantial risk of serious harm to a pretrial detainee case, a matter best left for the higher courts to unravel. In this case, since Plaintiff failed to demonstrate more than negligent conduct,

the Court is persuaded that Plaintiff has not shown a constitutional violation under either standard of proof. An explanation follows.

In undertaking its review, it is important for this Court to recognize what has been found not to constitute deliberate indifference in the failure to protect context. For example, failure of a guard to be at his post does not amount to deliberate indifference. Pope v. Smith, No. 13-00345-KD-C, 2014 WL 1760958, at * 9 (S.D. Ala. May 1, 2014). See Hale, 50 F.3d at 1582 (finding failure of guard to check bullpen for two-and-a-half hours insufficient to support the level of deliberate indifference required). Also, failure to conduct cell checks and head counts does not amount to deliberate indifference. Goodman, 718 F.3d at 1332. And, although a federal court may find a "dereliction of duty" that facilitates violence disturbing, it should not meddle in the administration of jails and prisons, and it must not metamorphose the deliberate indifference standard into a "font of tort law[.]" Goodman, 718 F.3d at 1334.

When reviewing a Fourteenth Amendment claim of deliberate indifference, it is relevant, if not dispositive, if the inmate provided notice to the guard that he feared an attack. Pope, 2004 WL 1760958, at *9. Also, revelation of an earlier attack makes "ongoing threats credible." Scott, 657 F. App'x at 881. See Losey, 596 F. App'x at 789 (finding an allegation of a prior attack

would be significant). On the other hand, having generalized knowledge that an inmate is a problem inmate, with a record of prison disobedience and a reputation of being prone to violence, does not meet the subjective awareness test that the individual poses a substantial risk of serious harm to another inmate. Gross v. White, 340 F. App'x 527, 531 (11th Cir.) (per curiam), aff'd in part by 340 F. App'x 527 (11th Cir. 2009). Notably, an isolated attack, even when the jailers broke the rules by placing a designated violent-prone inmate in with another inmate, does not constitute deliberate indifference. Id.

In order to constitute deliberate indifference of a constitutional dimension, the known risk of injury must be a strong likelihood, not just a mere possibility. Concepcion, 2011 WL 2560451, at *9 (quotation and citation omitted). Thus, an individual defendant must have "a clear awareness of specific danger of an inmate-on-inmate attack." Losey, 596 F. App'x at 789.

## VI.  Qualified Immunity

Defendant Flanigan claims he is entitled to qualified immunity. Motion at 6. As the Supreme Court recently noted, "[q]ualified immunity attaches when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Kisela v. Hughes, 138 S.Ct. 1148, 1152 (2018) (per curiam) (quoting White v. Pauly, 137 S.Ct. 548, 551 (2017) (per curiam)). This immunity is an immunity

from suit and liability. <u>Jones v. Fransen</u>, 857 F.3d 843, 849 (11th Cir. 2017). The defense allows for the "proper balance" between competing interests, <u>Ziglar v. Abbasi</u>, 137 S.Ct. 1843, 1866 (2017), and this balance has been thoroughly described by the Eleventh Circuit as follows:

> The qualified-immunity defense reflects an effort to balance "the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." <u>Pearson v. Callahan</u>, 555 U.S. 223, 231, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009). The doctrine resolves this balance by protecting government officials engaged in discretionary functions and sued in their individual capacities unless they violate "clearly established federal statutory or constitutional rights of which a reasonable person would have known." <u>Keating v. City of Miami</u>, 598 F.3d 753, 762 (11th Cir. 2010) (quotation marks and brackets omitted).

> As a result, qualified immunity shields from liability "all but the plainly incompetent or one who is knowingly violating the federal law." <u>Lee v. Ferraro</u>, 284 F.3d 1188, 1194 (11th Cir. 2002). But the doctrine's protections do not extend to one who "knew or reasonably should have known that the action he took within his sphere of official responsibility would violate the constitutional rights of the [plaintiff]." <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 815, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982) (internal quotation marks and alteration omitted).

> To invoke qualified immunity, a public official must first demonstrate that he was acting within the scope of his or her discretionary authority. <u>Maddox v. Stephens</u>, 727 F.3d 1109, 1120 (11th Cir. 2013). As we have explained the term "discretionary

authority," it "include[s] all actions of a
governmental official that (1) were undertaken
pursuant to the performance of his duties, and
(2) were within the scope of his authority."
Jordan v. Doe, 38 F.3d 1559, 1566 (11th Cir.
1994) (internal quotation marks omitted).
Here, it is clear that Defendant Officers
satisfied this requirement, as they engaged in
all of the challenged actions while on duty as
police officers conducting investigative and
seizure functions.

Because Defendant Officers have
established that they were acting within the
scope of their discretionary authority, the
burden shifts to [the plaintiff] to
demonstrate that qualified immunity is
inappropriate. See id. To do that, [the
plaintiff] must show that, when viewed in the
light most favorable to him, the facts
demonstrate that Defendant Officers violated
[Plaintiff's] constitutional right and that
that right was "clearly established ... in
light of the specific context of the case, not
as a broad general proposition[,]" at the time
of Defendant officers' actions. Saucier v.
Katz, 533 U.S. 194, 201, 121 S.Ct. 2151, 150
L.Ed.2d 272 (2001), overruled in part on other
grounds by Pearson, 555 U.S. 223, 129 S.Ct.
808. We may decide these issues in either
order, but, to survive a qualified-immunity
defense, [the plaintiff] must satisfy both
showings. Maddox, 727 F.3d at 1120-21
(citation omitted).

Jones, 857 F.3d at 850-51.

It is undisputed that Defendant Flanigan was engaged in
discretionary functions during the events at issue. To defeat the
defense of qualified immunity, Plaintiff must show both a
constitutional violation and the constitutional right was clearly
established.

The Supreme Court has repeatedly told courts "not to define clearly established law at a high level of generality[;]" instead, "existing precedent must have placed the statutory or constitutional question beyond debate." Kisela v. Hughes, 138 S.Ct. at 1152 (citations omitted). Although one need not present a case directly on point for a right to be clearly established, a plaintiff must identify a case where a corrections officer, acting under similar circumstances, was held to violate Fourteenth Amendment rights.

In his Motion, Defendant Flanigan contends "[t]he uncontradicted records evidence in this matter fails to establish that Plaintiff was facing a substantial risk of serious harm prior to the incident or that Officer Flanigan knew of any risk and failed to act reasonably." Motion at 9. He references the following in support of his contention: Plaintiff was not in fear of Moran; Plaintiff initiated the dispute with Moran, resulting in Moran requesting a housing change; Plaintiff did not take Moran's vague, unspecified "threats" seriously as these statements in a jail environment amount to just "talk"; and, Plaintiff's conversation with Officer Flanigan put Flanigan on notice that there was a dispute over Moran reading Plaintiff's mail, not some sort of dispute resulting in fear of an assault. Id.

Apparently, there is no dispute that Plaintiff was injured when inmate Moran cut him in the jaw on November 19, 2014, and

Plaintiff received stitches to his left jaw. (Doc. 26-1 at 22-24). Plaintiff and Moran had been cellmates, but Plaintiff became unhappy with Moran when he read Plaintiff's legal paperwork. <u>Id</u>. at 34. They had a verbal altercation, and Plaintiff said he pushed Moran in the face. <u>Id</u>. at 35. Plaintiff described himself as "way bigger" than Moran. <u>Id</u>. Plaintiff also described Moran as young, perhaps 19 or 20. <u>Id</u>. at 36. Plaintiff had just turned 35. <u>Id</u>. After their dispute, Moran moved out of the shared cell and was assigned to a different cell, upon his request. <u>Id</u>. at 36-37.

Thereafter, Plaintiff described their verbal sparring: "Yeah. I mean, he –– you know, he feel some type of way. He talking crazy. Meaning, disrespecting me everyday. Talking, yelling out the door. I'm doing the same. You know, vice versa. Talking about what he gonna do and all that." <u>Id</u>. at 38. Plaintiff told Moran he was not going to do anything. <u>Id</u>. at 39. Plaintiff described Moran's taunting remarks as "just part of, I guess, being in prison. I don't know, or jail." <u>Id</u>. at 39.

Plaintiff said Moran, when out of his cell, talked crazy and kicked Plaintiff's door. <u>Id</u>. Plaintiff knew the officers in the booth could hear the commotion, but Plaintiff did not keep track of which officers were in the booth. <u>Id</u>. at 40. Plaintiff explained that when officers feed the inmates, they tell the inmates to shut up or get off the cell door if they are talking crazy. <u>Id</u>.

With respect to Defendant Flanigan, Plaintiff testified that the officer inquired as to why Plaintiff and Moran were separated, and Plaintiff told Flanigan it was because Moran snooped in Plaintiff's mail, so Plaintiff had him get out of the cell. Id. at 41. Plaintiff testified he never had a physical altercation with Moran prior to November 19, 2014. Id. at 42. When asked if Plaintiff ever told Flanigan or another officer that he was worried that Moran was going to hurt him, Plaintiff responded that he never told the officers he was worried about Moran. Id. at 42-43. Plaintiff said Flanigan did hear Plaintiff and Moran "talking crazy to each other." Id. at 43. Plaintiff said he told Flanigan to make sure Moran is never out when Plaintiff is out. Id.

Plaintiff attested that Defendant Flanigan did not give Moran's talk any weight because he considered Moran a juvenile who had just left the juvenile dormitory. Id. at 43-44. Flanigan told Plaintiff not to feed into the dispute as Moran is not going to do anything. Id. at 43. Plaintiff responded affirmatively when asked if this was an attempt by Flanigan to calm the situation. Id.

Plaintiff described the November 19, 2014 incident:

> Well, basically I was coming out of my cell
> for law library 'cause I was pro se. They
> rode my door. They told me to step down the
> stairs. But when I -- as I'm stepping down
> the stairs, there ain't nobody there. It
> wasn't no officer in there as I'm stepping
> down the stairs. Then Moran come up. The
> door open. I guess they wanted me to go out
> in the hall. But as I coming down the stairs,
> Moran come in the door, and that's when he

17

> attacked. He swung. But I didn't know he hit
> me with razor, though. I thought he hit me
> with a closed fist, though, on my way coming
> down the stairs. So we're fighting, falling
> on the steps, and I didn't even make it all
> the way down.

Id. at 47-48.

Plaintiff thought Moran came from the hallway, but was unsure where he came from. Id. at 48-49. Plaintiff said the officer was supposed to be at his door upon Plaintiff exiting his cell. Id. at 49. Plaintiff also said the officers should have made sure the other inmates were secured in their cells prior to letting Plaintiff out of his cell. Id.

Plaintiff described the events that transpired the morning of November 19, 2014, prior to Moran's attack:

> A    He [Moran] was making insults but I
> wasn't thinking nothing of it. It was, like,
> the same thing what he say every day usually.
>
> Q    Okay.
>
> A    You know what I mean.
>
> Q    So you weren't --
>
> A    Threatening me and all that.
>
> Q    You weren't thinking, oh, this is the day
> he's going to get me?
>
> A    No. I wasn't thinking that.

Id. at 52.

Plaintiff contends Defendant Flanigan failed in his job because he was supposed to make sure Plaintiff was escorted, and he

18

was supposed to make sure no one was out of a cell before Plaintiff came out of his cell. Id. at 54. Plaintiff explained that Defendant Flanigan knew Plaintiff and Moran had issues because Flanigan heard the threats and insults. Id. at 55.

In his Declaration, Defendant Flanigan states he was unaware of "any verbal or physical altercation" between Plaintiff and Jaekwon Moran. (Doc. 26-2 at 1). Defendant Flanigan denies hearing Moran making threats or derogatory statements to Plaintiff or seeking Moran kick Plaintiff's cell door. Id. Defendant Flanigan did not recall a conversation with Plaintiff about why he was no longer a cellmate with Moran. Id. at 2. On the date of the physical altercation, Flanigan states he did not hear any threats or statements by Moran concerning Plaintiff. Id. Finally, Defendant Flanigan relates the following:

> In my 10 years of experience as a corrections officer, I have overheard many inmates make statements such as "I will f you up" or similar things about officers and other inmates; however, these types of statements are rarely acted on and, had I heard inmate Moran make such a statement prior to the incident, it would not have been unusual and I would not have expect[ed] that to lead to a physical altercation.

Id.

Defendant Flanigan contends, "[e]ven accepting as true Plaintiff's version of events, the uncontradicted record evidence establishes that Officer Flanigan did not violate Plaintiff's constitutional rights." Motion at 14. Defendant Flanigan

maintains the law was not clearly established that his actions were unconstitutional. Defendant Flanigan raises the defense of qualified immunity and claims immunity from suit and liability in this civil rights action. Id.

In Plaintiff's Response, he emphasizes the fact that Defendant Flanigan, in his actions on November 19, 2014, deviated from institutional policies, as exhibited by the submission of the relevant policies to the Court. Through this submission, at most, Plaintiff has presented evidence of dereliction of duty, not deliberate indifference. This is a matter which sounds in tort, not constitutional law. Plaintiff suggests that Defendant Flanigan was not at his post, as he did not come to Plaintiff's cell to escort Plaintiff down the stairs, but again, this would amount to negligent conduct.

Plaintiff complains of other failures to comply with institutional duties, like a failure to frisk/search Moran or to make sure no inmates were out of their cells when Plaintiff was released from his cell, but again, Plaintiff is complaining about negligent acts that contributed to the incident, but do not amount to deliberate indifference.

To the extent that Defendant Flanigan saw inmate Moran kicking Plaintiff's door or overheard their verbal sparring, this does not amount to notice that Plaintiff actually feared an attack. In this case, there had been no earlier attack to make Moran's ongoing

threats credible. Instead, Plaintiff describes verbal sparring between detainees who grew to dislike each other after being cellmates. Plaintiff never provided notice to Defendant Flanigan that he actually feared an attack or was worried that he was going to be attacked. At most, Defendant Flanigan was aware that there had been verbal sparring and dissension between the two inmates, an admittedly common occurrence in a jail environment, and Flanigan remained unconcerned about this ongoing spat between the inmates, something he deemed not unusual and not expected to lead to a physical altercation. See Declaration (Doc. 26-2 at 2).

Plaintiff himself describes himself as the bigger and older inmate, and Moran as the much younger and smaller or slighter inmate, a juvenile in Defendant Flanigan's perspective, just released from the "jit dorm," who was not actually going to do anything but "talk." (Doc. 26-1 at 43). Of note, Plaintiff described his interaction with Moran the morning of the attack as the usual - with Moran making insults and Plaintiff "thinking nothing of it." Id. at 52.

Assuming arguendo, Defendant Flanigan had generalized knowledge of Moran being a problem inmate for banging on doors and making threatening or insulting remarks to Plaintiff, this knowledge does not meet the subjective awareness test that Moran posed a substantial risk of serious harm to Plaintiff. Plaintiff does not allege Moran had a record of violent attacks on other

inmates, and his isolated attack on Plaintiff, even if Defendant Flanigan ignored or disobeyed the rules by releasing Plaintiff from his cell without an escort being at cell front or without ensuring that no other inmates were out of their cells and had access to Plaintiff, does not constitute deliberate indifference.

The Court concludes Defendant Flanigan did not violate Plaintiff's constitutional rights; therefore, he is entitled to qualified immunity. At the time of the incident described in the Complaint, Defendant Flanigan was acting within the scope of his discretionary authority. Plaintiff has failed to show, even when viewing the undisputed facts in the light most favorable to him, that Defendant Flanigan violated Plaintiff's constitutional right to be free from deliberate indifference to a substantial risk of serious harm under the Fourteenth Amendment.

Upon review, Plaintiff has failed to produce sufficient evidence of a substantial risk of serious harm, Defendant's deliberate indifference to that risk, and causation. Plaintiff is required to show that Defendant Flanigan was both aware of facts from which the inference could be drawn that a substantial risk of serious harm existed, and that Flanigan did actually draw the inference. Plaintiff, at most, demonstrates that there was a mere possibility of violence due to the prior friction between Plaintiff and inmate Moran. To the extent Flanigan overheard the arguments between the inmates or was advised of Moran's actions, Flanigan did

not draw the inference that a substantial risk of serious harm existed; Plaintiff testified that Defendant Flanigan perceived inmate Moran, a younger and smaller inmate, as a juvenile, who was just "talking." Significantly, even Plaintiff believed Moran's November 19, 2014 morning insults were nothing more than Moran's usual, daily rant.

Here, "[t]he mere existence of a scintilla of evidence" is insufficient evidence to support the Fourteenth Amendment claim. Goodman, 718 F.3d at 1332 (citation omitted). Plaintiff has not presented evidence which would support a reasonable jury's finding that Defendant Flanigan "harbored a subjective awareness" that Plaintiff was in serious danger when he was released from his cell. Id. Any failure to follow policies and procedures would amount to negligence, and there is insufficient evidence to support a claim that Defendant Flanigan knew of a substantial risk of serious harm to Plaintiff from inmate Moran. Again, a dereliction of duty for failing to follow procedure, while not commendable, is not of constitutional magnitude.

Prior to the attack by Moran, Plaintiff did not notify Defendant Flanigan or other officers that he fearful or was worried about an attack by Moran. Although Moran insulted Plaintiff the morning of the assault, Plaintiff said he was not worried about Moran. After due consideration of the evidence presented to the Court, Plaintiff has failed to demonstrate Defendant Flanigan was

deliberately indifferent to a substantial risk of serious harm that Plaintiff would be attacked by inmate Moran. At most, Plaintiff has shown a negligent failure to protect him from an isolated attack.

Based on the above, Defendant's Motion is due to be granted and judgment will be entered for the Defendant.

Therefore, it is now

**ORDERED:**

1. Defendant Officer Flanigan's Dispositive Motion for Summary Judgment (Doc. 26) is **GRANTED**, and the **Clerk** shall enter judgment for Defendant Officer Flanigan, and against Plaintiff Bartholomew Stay.

2. The **Clerk** shall terminate all pending motions, enter judgment accordingly, and close this case.

**DONE AND ORDERED** at Jacksonville, Florida, this 23rd day of August, 2018.

BRIAN J. DAVIS
United States District Judge

sa 8/17
c:
Bartholomew Stay
Counsel of Record